UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

LINDA REED )
            Plaintiff, )
V. )
            ) Case No 14-C-0145
COLUMBIA ST. MARY HOSPITAL )
            Defendant. )

## PLAINTIFF'S AMENDED COMPLAINT

### INTRODUCTION

1. On February 24, 2014 Judge J P. Stadtmueller dismissed Plaintiff's Complaint. Plaintiff's complaint did not meet the threshold as it is currently written Rule 8(a)(2).

2. Judge granted Plaintiff leave to file an amended complaint in 14 days Plaintiff's motion for leave to proceed in forma papuperis and motion to appoint counsel to be held in abeyance pending Plaintiff's submission of an amend complaint.

3. Plaintiff respectfully moves the Court, to accept her AMENDED COMPLAINT, a copy of which is attached hereto. In an effort to organize her complaint, Plaintiff used numbers and letters and attempted to connect the alleged fact specifically to each claim. She prays it is enough to meet the requires of the rules.

5. Finally, Plaintiff's amended complaint is not futile as Plaintiff has alleged sufficient facts to state a claim for relief that is facially plausible. Plaintiff's desires her day in court.

### CONCLUSION

6. For the reasons above, Plaintiff prays that this Honorable Court gives her amended complaint the most liberal construction.

Respectfully submitted

*Linda Reed*

Linda Reed, pro se

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| LINDA REED, pro se<br>    Plaintiff,<br><br>V.<br><br><br>COLUMBIA ST. MARY HOSPITAL<br><br>    Defendant. | Case No. <u>14-C-0145</u> |

**COMPLAINT**

1. Plaintiff Linda Reed, pro se, as her Complaint, respectfully states:

2.. This action is brought pursuant to Americans with Disabilities act of 1990 ("title III") and ("ADA"), and 42 U.S.C, 12181 et seq., 12182 et seq , and its implementing regulations 28 C.F.R. Part 36 and/or Section 504 Rehabilitation Act 29 U.S.C. 794; under federal law, specifically, 42 U.S.C. §1983 and 1988; 42 U.S.C. § 1997; 18 U.S.C. § 1347 Plaintiff seeks injunctive relief for unlawful discrimination under Section 504 of the Rehabilitation Act of 1973, U.S.C. 794 and title III of the Americans with Disabilities Act of 1990 and included in this complaint are damages for battery; failure to intervene; negligent misrepresentation; invasion of privacy; retaliation or coercion; negligence; intentional infliction of emotional distress; medical negligence and false imprisonment against Columbia St. Mary Hospital.

3.. Plaintiff believes this action is based on reasonable cause to believe that Columbia St. Mary's Hospital discriminated against a person or group of person, in violation of title III and that such discrimination raises issues of general public importance. 42 U.S.C 12188(b)(1). Defendant receives

1

section 504 federal funds.

## Jurisdiction and Venue

4.  This Court has jurisdiction over this action pursuant to 42 U.S.C. 12188 (b) (1)(B) and 28 U.S.C. 1331 and 1345. This Court may grant equitable relief, monetary damages, and a civil penalty pursuant to 42 U.S. C. 12188(b)(2) and 28 U.S.C. 2201 and 2202

Venue is proper in this District pursuant to 28 U.S.C. 1391, because a substantial part of the events or omission giving rise to this claim occurred in this District.

## Parties

5.  <u>Plaintiff</u> Linda Reed, a 60 year old woman, is a qualified disabled person as defined by the Americans with Disability Act. Plaintiff has a physical and a mental impairment that substantially limits one or more major life activities, she has a history or record of such an impairment, she is a person who is perceived by others as having such an impairments; has a record of such impairment; and regarded as having an impairment 42 U.S.C. 12102 (2)

6.  <u>Defendant</u> Columbia St. Mary's Hospital (CSM) is a corporation or business entity of unknown form doing business in Milwaukee County at 2301 North Lake Dr. Milwaukee Wisconsin which is the location wherein the injuries and damages occurred. CSM is a "public entity" as define by ADA in relevant parts. Defendant at all times, acting through it duly authorized agents and employees, including nurses and doctors.

## Facts

7.  On or about March 8, 2012 Plaintiff was voluntarily admitted to Colombia St. Mary's Hospital (CSM) She was a 58 years-old with Tardive Dyskinsa, a neurological disorder, PTSD, sensory disorder and acute anxiety. She reported suicidal tendencies and problems with her thinking. Plaintiff was escorted to the hospital by her case manager. The case manager assisted with Plaintiff's admission and

was plaintiff's only contact person for purposes of discharge and transportation.

8. Plaintiff has a speech impairment. She uses a computer to assist with her speech. Plaintiff speech impairment and other disorders substantially limits one or more major life activities

9. Kaplan accepted Plaintiff as his patient. Plaintiff had no previous contact with Dr. Kaplan . Plaintiff had medicare and medicaid insurance for the purposes of paying for services rendered by the Defendant .

10. Plaintiff is allergic to neuroleptic psychotropic drugs. Throughout her stay at CSM, Defendant offered plaintiff haldol for treatment. Haldol is a neuroleptic psychotropic drug. Plaintiff refused. Defendant failed to offer plaintiff any alternatives to haldol or coping skills

11. At the time of admission, plaintiff was given a brochure named "Client Rights and the Grievance Procedure For inpatient and residential Services. For clients receiving services in Wisconsin for mental illness, Alcohol or other drug abuse or developmental disabilities rev. 11/11"

12. Upon information and belief in respect to this document , Plaintiff was a patient in CSM March 8-12, 2012 , Defendant failed to (a). allow Plaintiff to use the telephone, (b). allow Plaintiff to talk to a chaplain, (c) allow Plaintiff to leave the hospital (d). allow Plaintiff to participate in group activities (e) allow Plaintiff to speak to an administrator (f). allow Plaintiff to view her records, to make sure she was not given neuroleptic psychotropic drugs, (g) failed to discuss its diagnosis with the Plaintiff (h) to give Plaintiff correct information regarding her rights as a patient. (i) give Plaintiff ADA information including civil rights (j) to accurately note Plaintiffs' medical records (k) administer Plaintiff medical care (l) provide a safe and secure environment for Plaintiff and its patients and staff. (m) failed to offer Plaintiff and alternative medications to haldol. As a result, of Defendant denial and failures Plaintiff was discrimination against, injured, and excluded from any decision making regarding her health; and accommodations for her disabilities. Defendant's denied her request without explanation.

3

13. March 11, 2012 at approximately 6:00 a.m., Plaintiff asked for her speech computer, so that she could type a message to the staff on duty and request her medication. The message she wanted to give to the staff was a request (a) to fax or called her case manager for pick up on March 12, 2012 because she was going to be discharged after 9:00 a.m.. (b) Plaintiff was told, all weekend that staff had tried to contact her case manager and she had not return the call (c) Plaintiff knew that the case manger was in her office early Monday morning March 12, 2012. (d) to ensure case manager was going to be contacted and available for Plaintiff's discharge, staff would have to fax or leave case manager a message that would be in her mail box when she arrived at work early the next day. (e) plaintiff also requested her mediation. (f) Defendant denied Plaintiff her speech computer and medication. A male staff said "go to bed."

14. Plaintiff then wrote the message on a napkin and offered it to the staff. Staff said, "That's it."

15. Defendant unlawfully restrained and placed in seclusion. Defendant did not give Plaintiff any explanation for why she was put in seclusion, at the time of the incident. Defendant injured Plaintiff.

16. While in isolation, (a). Plaintiff was thrown on a mattress which was on the floor, from a standing position (b) the mattress had a loose sheet on it. (c) Plaintiff tried to commit suicide with a loose sheet. (d). She was unable to control her bodily functions and had a bowel movement on herself and on the floor. Plaintiff feared for her life.

17. Defendant failed to provide Plaintiff with mental health assistance after she tried to commit suicide.

18. Defendant injured Plaintiff's body. Plaintiff sustained muscle strains and was prescribed pain medication for her injuries.

19. After appropriately 9:00 a.m., March 12, 2012 Plaintiff was discharged. Defendant denied plaintiff's request to use the telephone to call her case manager, again for transportation and assistance with discharge orders.

4

20. Defendant refused to make a telephone call for Plaintiff to her case manager so that she would pick up Plaintiff from the hospital when she was discharged. Arrangement were made by the case manger after Plaintiff was admitted into the hospital. Case manager was not at CSM to assist Plaintiff.

21. After Plaintiff was ready to leave the hospital, a nurse entered her room with a wheelchair. Two unknown security guards were waiting for Plaintiff at the nurses' station and escorted her out of the inpatient floor.

22. Plaintiff became sick on the elevator and on her way out of CSM. When the security guard reach the hospital's lobby the security guard made a call on a hand held radio. Some people appeared in the lobby, they watched as plaintiff's body involuntarily moved. Security guard yelled at the on lookers "she is faking." No one help the Plaintiff.

23. The security guards wheeled Plaintiff out the hospital main entry, to a cab, parked at the entry of the hospital. (a). One of the security guards grabbed plaintiff's bag and speech computer from her lap, (b) threw her property into the cab, (c) next, he violently grabbed and jerked plaintiff out of the wheelchair, pushed her into the cab; (e) while he kneed in the back (f) Linda's glasses were lost in the battery upon her person and property.

24. There were no security camera at the hospital's front lobby, nor on the outside of the hospital at the entrance.

25. After a timorous exit and discharge from CSM, Defendant continued to engage Linda while in the privacy of her home. (a). Defendant called Plaintiff's home and asked for plaintiff's daughter. (b). Plaintiff also received a telephone call from Dr. Shimp (misspelled), Director of Emergency, (c). failed to send Plaintiff home without her medications.(e) Plaintiff glasses were missing.(f) Plaintiff called Milwaukee Police department (g)Plaintiff went to the doctor for treatment. (g) a year after Plaintiff's was released (Friday 1, 2013) plaintiff's daughter received a telephone call from defendant's security office. Plaintiff's daughter only relationship with the Defendant was her mother's Plaintiff's admission

5

into CSM.

26. Plaintiff filed its complaint in the form of a letter to Attorney Taylor, risk management. (1). Plaintiff complaint described the incidents she incurred while in the hospital. (2). she also included her frustration with the delay in her request for copies of her medical records.

27. Plaintiff submitted six signed releases for her medical records and many emails to Tanisha Toney, Supervisor at IOD Client Service.

28. Plaintiff contacted Disability Rights Wisconsin for assistance in getting her medical rights. David Woolf worked with CSM to get me records.

29. On June 26, 2012 Plaintiff had her daughter to call the hospital to find out how Plaintiff could file a complaint without any accommodations on its website for disabled people.

30. June 27, 2012 Donna Taylor, JD sent Plaintiff a letter asking Plaintiff to document her concerns in a letter.

31. Plaintiff finally received her records months later

32. June 29, 2012 Taylor sent Plaintiff a letter which stated Plaintiff was "thrown across a room." Plaintiff attempted to leave a voice mail for Ms. Taylor to correct the allegation of "thrown across a room." The truth is Plaintiff was thrown on a mattress which was on the floor.

33. On July 5, 2012 Plaintiff sent Ms. Taylor a four page informal complaint.

34. July 18, 2012 Plaintiff received a four page response from Defendant which caused her concern. Defendant's response stated that Plaintiff memory was faulty: (a) Defendant cited information that Plaintiff never received on admission (b) Defendant stated "Due to your behavior," she was put into a "quiet room," yet, the medical records called it "seclusion," and seclusion is what Plaintiff remembered it to be. (c). Defendant alleges Plaintiff had an "equilibrium" problem. Plaintiff denies having an equilibrium problem. (d) Defendant never reported the incident, or Plaintiff's injuries to Taylor (risk management). Taylor said, she first learned of Plaintiff's injuries and seclusion in the complaint letter

sent to CSM (e) Defendant claimed hospital administration is not on the premise at night and on the weekends. Plaintiff recognized Mr. Fry, hospital administrator as a man sitting at the nurses station, that weekend. (f). Mr. Fry entered Plaintiff's room while she was preparing to leave. He confirmed that he was at the nurses' station. He said, no one told him Plaintiff wanted to talk to him(g) Defendant stated, no security guards were at the nurses station, where, they escorted Plaintiff out of the hospital. Plaintiff remembered it differently (h) The first time Plaintiff was aware Taylor, Fry and other staff were the on looker in the lobby who watched the battery upon Plaintiff was July 18, 2012. Yet there are no reports of the contact between Plaintiff and the security guard in the record. (i) Defendant included in its response that the hospital gave Plaintiff specific information regarding her right. Plaintiff received no such information. (j) Defendant said they talked to Dr. Kaplan, Fry and other staff without informed consent orally or in writing.

## COUNT I

### TITLE III OF THE AMERICAN WITH DISABILITIES

35. The allegations of paragraphs 1-35 of the Complaint are adopted and re-alleged and incorporated by reference as if fully stated herein

36. Defendant discriminated against Linda Reed. The discrimination, included but not limited to on the basis of disability, to, the full and equal enjoyment of its services, facilities, privileges, advantage and accommodations, in violation of 42 U.S.C, 12183, and its implementing regulations at 28 C.F.R. Part 36.

37. Defendant violated title III section 504 by failing to oversee and implement prevention efforts to avoid ADA violations from occurring.

38. Defendant's conduct was intentional discrimination and acted with deliberate indifference to the strong likelihood that a violation of federally protected rights

7

## COUNT II BATTERY

39. The allegations of paragraphs 1-38. of the Complaint are hereby re-alleged and incorporated by reference as if fully stated herein

40. Plaintiff was at all times was a disabled person within the meaning of ADA, and had limitation which that substantially limits one or more major life activities, a person who has a history or record of such an impairment, or a person who is perceived by others as having such an impairment.

41. Linda was physically and mentally injured on two occasions while at Columbia St. Mary's Hospital. Firstly, when Defendant threw her on the floor, onto to the mattress from a standing position. Plaintiff was attempting to give the nurse a handwritten note to contact her case manager for transportation and discharge.

42. Secondly, Defendant injured Plaintiff when she was violently jerked from the wheelchair, shoved in the back of the taxicab and kneed in her back, in fear alone.

43. Defendant touch was unwanted, offensive and without Plaintiff's consent. The force was used for the purpose of causing harm; there was no legitimate objective; and was not applied in a good faith effort . The result of the harm caused Plaintiff substantial emotional suffering and physical injury.

44. Plaintiff called the Milwaukee Police Department and filed a battery complaint against the Defendant..

45. The amount of force was unneeded and inappropriate; the force was the proximate cause of the various body injuries and was maliciously applied for the very purpose of causing harm. She had a reasonable apprehension that her life was in danger

46. Defendant refused to take remedial steps while plaintiff was still on the property and watched while she was being attacked and battered.

47. As a direct and legal result of the acts or omissions of the Defendant, Plaintiffs suffered both

8

physical injuries and mental distress and is entitled to relief.

48.     Plaintiff suffered general and special damages in an amount to be proven at trial.

## COUNT III FAILURE TO INTERVENE

49..    The allegations of paragraphs 1-48 of the Complaint are hereby re-alleged and incorporated by reference as if fully stated herein

50..    Attorney Taylor, Mr. Frye and other unknown staff watched. Plaintiff alleges that Ms. Taylor, Mr. Frye and other unknown staff did not intervene nor provide medical assistance.

51.     Defendant acted with malice and negligence by not supervising or intervening. Any reasonable prudent person in their position would have known that Plaintiff rights were being violated.

52.     Defendant failed to simply contacted Plaintiff's case manager; Defendant denied Plaintiff's choice for transportation (accommodation) and discharge; the single telephone contact number on record, that would have resolved all of the conflicts because she would have had been escorted out of the hospital by her case manager along with Defendant's staff. Those arrangements were made when plaintiff was admitted into the hospital and discussed with hospital staff. Defendant failed to perform any such minimal or related due care

53.     Defendant refused to take remedial steps while plaintiff was still on the property and watched while she was being attacked and battered.

54.     Defendant failed to call the Milwaukee Police Department to remove Plaintiff from its property. Defendant's conduct was not only direct participation in the battery but, also gross negligence in the supervision of subordinates who committed the wrongful acts. Plaintiff needed their assistance.

55.     Defendant failed to train properly its employees in appropriate restraint techniques and failed to administer emergency medical care. Defendant failed implement appropriate policies accordingly. Defendant failed to act accordingly after becoming aware of such instances and thus exhibited

9

deliberate indifference to the bodily injuries caused by Defendant employees.

56. Defendant gave the security guard the green light to go. Plaintiff's injuries were foreseeable.

57. Defendant's above-described conduct was direct and legal result of acts or omissions Plaintiff sustained injuries and she is entitled to relief.

## COUNT V--NEGLIGENT MISREPRESENTATION

58. The allegations of paragraphs 1-57, specifically paragraph 34 of the Complaint are hereby re-alleged and incorporated by reference as if fully stated herein

59. Plaintiff was overborne by a series of misrepresentations by the Defendant which caused her confusion, doubt, low self esteem and other harm. The Defendant misrepresented that the alleged equilibrium warranted her to be thrown on a mattress from a standing position; put into seclusion and injured because of some unknown behavior. The true facts were: Plaintiff does not have an equilibrium problem and there is no legitimate reason for the Defendant to put Plaintiff in seclusion.

60 Plaintiff severed all relationship with doctors and case managers. She was lead to believe that her long time doctor violated her trust. The truth is Dr. Eric Kaplan violated Plaintiff's trust. Defendant's misrepresentations were made intentionally, unlawfully and the deceptively for the purpose of gaining legal advantage and to exclude and prevent Plaintiff from exercising her guaranteed Constitution rights.

61. Defendant had a duty to disclose accurate fact to Plaintiff and in her records because of their patient-physician relationship, their duty was fiduciary. Defendant was at all times in a dominate position.

62. Without disclosing accurate fact Defendant's behavior compromises Linda Reed's safety and future care. One example of plaintiff's harm is unnecessary, sometimes invasive, medical procedures if another physician reads Plaintiff's medical records. Dr. Kaplan entered false codes on the plaintiff

10

record leaves her with a false diagnosis being associated with her or her family's medical history.

63. The Defendant concealed and failed to disclose certain facts relevant to the plaintiff's records, and DHS investigation. Defendant failed to adhere to the highest ethical in accordance with federal laws and regulations including the Federal Acquisition Regulations. Defendant had the opportunity to do so if they wanted to. Instead Defendant use Plaintiff complaint to cover up their faults.

64. Linda Reed's reliance on Defendant's representation was a substantial factor in causing her harm.

65.. Plaintiff, at the time these representations were made by defendant and at the time plaintiff took the actions herein alleged, was ignorant of the falsity of defendant's representations and believed them to be true.

66. The result of Defendant failure resulted in (1) creating a bias in favor of itself. (2) The defendant's conduct was reckless goes against and is inconsistent with acceptable business and/or medical practices resulting in great harm and injury to the plaintiff and is a derelict of duty (3) Plaintiff spent many hours trying to get an accurate, specific details about her alleged misconduct and the perception of it (4) once information is in the Plaintiff there is no changing it.

67. Defendant acted despicably, fraudulently and with recklessness oppression, fraud, and malice, and punitive damages should be assessed for that reason. Defendant had a duty of care and it breached that duty.. As a direct and legal result of acts or omissions Plaintiff sustained injuries including depression, anxiety attacks, isolation, confusion, insomnia.

### Count VI- Invasion of Privacy

68. The allegations of paragraphs 1-67 of the Complaint are hereby re-alleged and incorporated by reference as if fully stated herein

69. Defendant called two of her daughters and discussed confidential medical and health

11

information in violation of her right to privacy. (1) Defendant called plaintiff daughter's home on the false pretense of trying to help Plaintiff and concern for Reed's well-being. (2) Defendant called Plaintiff's home looking for another daughter on the same day she was released. Plaintiff was in the privacy of her home where she reasonably believed that she had left the bad memories behind.

70. Defendant's conduct embarrassed plaintiff and caused continuing mental anguish because she wished to keep the nature and extent of her illnesses private. Plaintiff did not want to include her daughters into her problems, because both of her daughters suffer from a debilitating, life threatening immune disease caused by stress. Defendant caused Plaintiff daughters great stress.

71. Defendant not only improperly disclosed plaintiff's information without written or oral consent but also improperly used it. Defendant failed to adequately protect it.

72. Defendant failed to get a signed consent to release Plaintiff's medical information.

73. While the Defendant has a due to collect and store medical information, Plaintiff's medical information is not to be used to its advantage when Plaintiff made her intent to sue Defendant for the violation of her rights to privacy. Defendant has no rights to retrieve Plaintiff information at will.

74. Defendant's above-described conduct is a direct and legal result of Defendant acts or omissions Plaintiff and her family sustained injuries including but not limited to enjoyment of life with her children and grandchildren, and additional stress. Plaintiff seeks award for general damages for pain and suffering as assessment of punitive damage in the sum to proof at trial.

## COUNT VII RETALIATION OR COERCION.

75. The allegations of paragraphs 1-74 of the Complaint are hereby re-alleged and incorporated by reference as if fully stated herein

76. Defendant whispered and taunted underhanded comments to Plaintiff about her disabilities as they passed her. Defendant scolded and warned Plaintiff, without provocation, they said, "Don't you

cause any trouble or disruption before she requested any treatment or service. Defendant threaten to use misrepresented information to advance their legal position when it became aware that plaintiff intended to file this complaint. The telephon call Plaintiff's daughter received from Defendant's security office, came shortly after Plaintiff contacted defendant's for a copy of the investigation of her complaint by the DHS. Defendant attempted to confuse, mislead, coerce, intimidate, threaten, an interfere with Plaintiff's right to file this complaint.

77. Plaintiff sent the Defendant a cease and desist demand letter telling Defendant to stop immediately using her medical records to retaliate against her and to stop misrepresenting Plaintiff's conduct.

78. Defendant's above-described conduct is the direct and legal result of acts or omissions Plaintiff sustained injuries and claims relief.

## COUNT VIII NEGLIGENCE

79. The allegations of paragraphs 1-78 of the Complaint are hereby re-alleged and incorporated by reference as if fully stated herein

80. Plaintiff was a patient of Defendant. Defendant, owed Plaintiff the duty of to exercise reasonable care, skill and judgment in Plaintiffs treatment and care.

81. Defendant negligently failed to exercise reasonable care, skill and judgment in Plaintiff's treatment and care, in that, it failed to adequately and properly assess the risks of injury to Plaintiff mental health and physical health. owed a duty of ordinary care to Plaintiff, to use the degree of care and skill that a reasonably prudent person would use. In this case Defendant is required to use that degree of care that a reasonable prudent physician would owe given his knowledge training expertise and skill.

82. Furthermore, Defendant failed to provide a reasonably safe environment for Plaintiff in light of

13

her high risk mental health condition. Defendant knew or should have known of the breach of care, violations of Plaintiff's civil rights, battery, injuries etc., and failed to remedy the situation.

83. Plaintiff's injuries as described were the direct and proximate result of Defendant's negligence Defendant could reasonably foresee they were causing Plaintiff injuries. Plaintiff has incurred and will continue in the future to incur expense for hospitalization, medical services and rehabilitative care. Plaintiff claims reimbursement and compensation for these expenses.

84. Defendant's above-described conduct is the direct and legal result of Defendant's negligence, Plaintiff suffered physical injury and mental disability, pain and suffering, mental anguish, loss of enjoyment of life and other severe and defoliating injuries. Plaintiff claims compensation for these injuries, Plaintiff sustained injuries and damages in a sum according to proof at trial.

## COUNT IX INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

85. The allegations of paragraphs 1-84 of the Complaint are hereby re-alleged and by incorporated reference as if fully stated herein conduct contributes substantially to the plaintiff's injuries and damage.

86. Defendant had the power and authority to intervene and stop the unwanted offensive touching of Linda. No reasonable, prudent person would watch a person to be battered on their property with out intervening with a simple telephone call to the police or a call to Plaintiff's case manager.

87. Defendant's conduct was extreme, unreasonable and outrageous and goes beyond the sensibility and decency of healthcare providers.

88. Defendant's above-described conduct is the direct and legal result of act or omissions Plaintiff sustained injuries. By engaging in such conduct, defendant intentionally ignored or recklessly disregarded the foreseeable risk that plaintiff would suffer extreme emotional distress as a result of defendant's conduct. As a proximate result of said conduct, plaintiff suffered severe emotional distress, pain and suffering, fear, anxiety, embarrassment, discomfort and humiliation, all to their general

14

damage in an amount to be proven, and incurred special damages in an amount to be proven.

## COUNT X MEDICAL NEGLIGENCE

89. The allegations of paragraphs 1-88 of the Complaint are hereby re-alleged and incorporated by reference as if fully stated herein

90. Plaintiff was a patient of the Defendant. Defendant was under the care of the Defendant. Defendant owed the Plaintiff a duty of ordinary care to use the degree of care and skill that a reasonable prudent person would use. In this case, the Defendant and is other staff, owed the Plaintiff a degree of care that a reasonably prudent physician would owe given his knowledge, training, expertise and skill

91. Defendant breached that duties of care.

92. Defendant failed to obtain the consent of the plaintiff when they discussed plaintiff's medical records and used the information in preparation for a legal proceeding.

93. Defendant failed to inform plaintiff of any diagnosis and only offered Plaintiff haldol.

94. Plaintiff had a patient-physician confidential relationship with the Defendant. She placed great reliance, faith and confidence in the professional word, advice and acts of the Dr. Eric Kaplan and Attorney Taylor. Defendant failed to use reasonable care.

95. Defendant failed to notify Dr. Kaplan of Plaintiff's injuries including the suicide attempt.

96. Defendant failed to order any medical test to confirm "equilibrium" problem as alleged by Attorney Taylor.

97. Defendant particularly, Dr. Kaplan and Attorney Taylor are learned, skilled and experienced in those subjects about which plaintiff knows little or nothing, but which are of the most vital importance and interest to her, since upon them she depend the health, or even life, of herself or family. Dr. Kaplan failed to exercise ordinary skill and knowledge. Defendant failed to inform plaintiff of any new or potential diagnosis.

98. Defendant's negligence caused Plaintiff great harm. Plaintiff worried that she might have been

doing something without knowing. Defendant had the opportunity to do so and they failed to do so. Tardive Dykinsa is involuntary movement in plaintiff body. The diagnosis was fairly new to her and it is a rare disorder.

99. Plaintiff disabilities were exacerbated by Defendant and is the proximate cause of injuries. Defendant knowing and intended to cause malicious harm to Linda Reed for litigation advantage.

100. The defendant knew or should have known that plaintiff was susceptible to emotional distress. Defendant consciously disregarded the probability of causing emotional distress.

101. Linda Reed experienced extreme emotional and psychic injuries with accompanying physical symptoms including isolation, lack of confidence, low self esteem, insomnia, nausea and the disruption social and family relationships. Defendant could easily foresee Plain was at risk and would suffer injuries.

110. She lost trust in the doctors and has not been able to return to any doctor for any care including but not limited to, her annual female examination, psychiatrist, therapist, case managers which places her at further risk of injuries. Defendant behavior has interfered with long standing relationship she had with her primary care doctor.

111. The Defendant's conduct as described above directly and proximately caused of Plaintiff's injuries and claims relief.

## COUNT XI FALSE IMPRISONMENT

112. The allegations of paragraphs 1-111 of the Complaint are hereby re-alleged and incorporated by reference as if fully stated herein

113. Defendant restrained Plaintiff and Plaintiff was injured. Plaintiff was not free to leave the seclusion room. She remained seclusion for an indeterminate amount of time. Plaintiff had a reasonable apprehension that her life was in danger.

114. The defendant acted without having reasonable grounds to believe that the plaintiff committed

16

an offense.

115. Defendant's above-described conduct constitutes false imprisonment of plaintiff. Defendant could foresee the risk of Plaintiff would suffer injuries but fail to stop injuring Plaintiff.

116. As a direct and legal result of the acts of false imprisonment, plaintiff suffered general and special damages in an amount to be proven at trial and is entitled to relief.

## PRAYERS FOR RELIEF

**WHEREFORE**, the above premises considered, Plaintiff prays for judgment against Defendant as followed:

1. That process issue to the Defendant and that they be required to answer in the time allowed by law.

2. That judgment be rendered in favor of the Plaintiff and against the on all causes of action asserted herein.

3. That Plaintiff be awarded those damages to include but not limited to special and general damages to which it may appear she are entitled by the proof submitted in this cause for their physical and mental pain and suffering, both past and future; permanent injury and disability; harm; loss of enjoyment of life; loss of her personalty, ; and medical and psychological expenses, both past and future.

4. That Plaintiff be awarded punitive damages against the Defendant.

5. That Plaintiff be awarded reasonable expenses incurred in this litigation, including reasonable attorney and expert fees.

6. That the Plaintiff receives any other further and general relief to which it may appear she is

17

entitled.

7. Grant judgment in favor of Plaintiff and declare that the defendant violated title III of the ADA, 42 U.S.C 12181 et seq., and its implementing regulations, 28 C.F.R. 36;

8. Enjoin the defendant, its officers, agents, employees, and all other persons in active concert and participation with the defendant, from engaging in discriminatory policies and practices against individuals on the basis of their disabilities, and specifically from failing or refusing to take appropriate steps to ensure compliance with the requirement of title III of the ADA, 42 U.S.C 12181 et seq., and its implementing regulations, 28 C.F.R. 36

**A JURY FOR THE TRIAL OF THIS MATTER.**

Respectfully submitted,

*/s/ Linda Reed*

Linda Reed, pro se
9940 West Fond du Lac Avenue
Milwaukee, WI 53224
Lindareed1018@sbcglobal.net

18